Mr. Justice Clayton
delivered the opinion of the court.
Although the record in this case is voluminous, the point in controversy lies in a narrow compass. In October, 1838, a judgment was obtained, by the Tombigbee Railroad Company, against Henry'Bell, Charles E. Taliaferro, and Thomas Bell, in the circuit court of Lowndes county; an execution issued, and a forthcoming bond was given, which was forfeited at the April term, 1839. At the April term, 1840, a motion was made to quash the execution and forthcoming bond, which was sustained by the court below. In 1841, an execution was issued upon the original judgment, to Noxubee county, which was levied by the sheriff upon several slaves, which were claimed by Mary E. Shotwell, and a bond given to try the right of property. In April, 1841, a motion was made to quash the execution, because more than a year and day had elapsed after the judgment before its issuance, and because it had been paid off. The court sustained the motion upon the latter-ground. From that judgment a writ of error was prosecuted to this court, and the judgment here reversed, at the January term, 1843. See 7 How. 216. The cause was remanded.
At the October term, 1843, of the circuit court, the present plaintiffs in error again moved to quash the execution issued to the sheriff of Noxubee county, which motion was overruled, and the cause again brought, by writ of error, to this court.
The principles which govern this case have already been repeatedly decided by this court. The order made, at the April term, 1840, quashing the forthcoming bond, was absolutely *563 void. Conn v. Pender, 1 S. & M. 386. Field v. Morse, Ib. 347. Of consequence, the executions subsequently issued upon the original judgment, which'had been merged in the judgment upon the bond, cannot be sustained. There is no judgment upon which they can rest. The execution now under consideration is in this situation.
The judgment of the court below must, therefore, be again reversed, and the original plaintiffs put to their execution, upon the judgment on the forfeited forthcoming bond. The order, purporting to quash it, made at a time when the court had no jurisdiction over it, is void, and interposes no obstacle to their proceeding upon it by another execution.
The course which this cause has taken is somewhat singular. It was formerly decided in this court upon one point, but a different result now reached upon another. This is explained, however, by the fact, that upon the former argument the present point was not made by the counsel, and if disclosed by the record, was overlooked by the ■ court. The record has been removed from the clerk’s office, and we cannot have access to it, to discover whether it was so full as the present. The argument was confined to the question of satisfaction of the judgment by the assignment, and the opinion went no farther. It is matter of regret that the whole subject was not brought to the view of the court, but as it was not, and as the judgment went only to a single point, the effect cannot be to render an act valid, which we have repeatedly decided to be void. Were the act of the court, in quashing the bond at a term subsequent to the return term, only erroneous, we might be justified in holding, that the error was cured by the conduct of the parties, and their acquiescence under it; but as it is wholly void, it is our duty to declare it to be so, whensoever the matter is brought to our view. It is an unauthorized act of the court, incapable of confirmation by the parties, because it had no jurisdiction to give the judgment ; and consent cannot confer a jurisdiction to give judgment, when not authorized by the law.
The judgment is reversed,' and the cause remanded.
*564 The counsel for the defendant in error filed the following petition for a rehearing:
To the Honorable the High Court of Errors and Appeals : the petition of Robert Shotwell, by his counsel, for a rehearing of No. 1245, H. Bell, &c. v. The Tombigbee Railroad Company, of whom he is transferred, respectfully shows : —
Petitioner, at the time the decision was pronounced, resided' at a distance, and was not in court; and his counsel, if either of them was present when it was delivered, did not hear or learn that the opinion in that case was delivered. About a week since the counsel heard of it. No opportunity, in fact, occurred, to enable petitioner, or his counsel, to avail of the Rule XI. requiring the application to be within four days. It is believed the rules adopted by the court, to regulate its own actions in matters solely of discretion, may be suspended, when the court itself may think it proper or necessary, to the end of special or general justice.
Although the decision in this case can only be greatly and peculiarly grievous to the petitioner, yet if the prior decisions of the court, on which alone it turned, formed a correct and sustainable doctrine, he ought to submit, and refer his irreparable loss to the accidents that caused it; but if it be demonstrable that the principle of jurisdiction, noticed in those previous cases, cannot be sustained as sound, then it is confidently believed that this court, as the tribunal of final resort, and the interpreter of the rules of civil conduct, will feel bound to overrule those decisions, and declare a surer, safer, and sounder principle.
It will, therefore, be unnecessary to recur to the facts of this case, and we will, as distinctly and briefly as possible, present the question, which we solemnly believe ought to be reconsidered. It is this — Whether the circuit court is wholly deprived of jurisdiction in any case supposable, to quash a forthcoming bond, at a term subsequent to that at which it is returned forfeited 1 And is such action of a circuit court, in every case, as to all purposes, absolutely void 1 We hold the *565 converse of these propositions, and believe it is demonstrable that there is no reason in law, justice, or expediency, for the adoption of either.
The statute allowing the defendant in execution to replevy the things seized, by giving a forthcoming bond, is silent as to any question arising upon the bond ; on its return, as forfeited, it is to have the force of a judgment, execution on it may issue, and no other security is to be taken. Jt was intended to afford temporary relief to the debtor, and a corresponding security to the creditor. It gave no day in court to the obligors, as was unduly affirmed by Judge Turner, 4 How. 369. Where is the statute giving a day in court, or any remedy whatever, to the obligors in such bond 1 There is none.
Whence, then, the remedy ? It existed in necessity ; and since legislation was silent, it was to be found .in the jurisprudence of the country. It was educible thus: Every court is expressly or inherently invested with the power of enforcing its judgments by final process, and of controlling its ministerial officer in the execution of it; the bond was taken by him in such execution ; and since it is incumbent on the court, on the presentation of the matter, to see if its officer have conformed to the law, it will compare the process with the. judgment, and quash it if it be unauthorized ; and compare the bond with both, and if it be such, on its face, as was not allowed by them and the law, will quash it also. The creditor being entitled to a valid security, will be allowed to question the bond. As the surety is supposed to have contracted without actual consideration, and from social and benevolent motives, he is permitted to ask judgment, if the officer have taken a bond to bind him. Much more may either obligor demand judgment on his plea of non est factum„ This last defence arises from a dictate of justice that is irresistible.
We next ask, what is the remedy 1 The bond is to be returned into court on the return day of the process, as forfeited, if the condition have been broken ; and “ thereupon ” it is to have the force and effect of a judgment. What, then, can resist or overturn it 1 If it had been, in fact, an adjudication *566 on that day of the term, it would have been open for correction, or revision, or recall, on any subsequent day of that term ; but it was not an actual judgment; the court had no concern in its concoction, and the act, in attaching the effect of a judgment to its forfeiture, designed no more than to engraft it, if valid, as a cumulative security upon the judgment, and to enforce it as a substitute. Tacitly, it left open every legal remedy to vacate it, if invalid. If the ministerial acts, in taking and returning the bond, must be regarded as an adjudication, it would follow that the same court could only reach it to recall it for some error of fact. For an error in law, an appellate court could only revise or reverse it. Yet if the bond be obtained by fraud, duress, or be forged, it would seem that as an adjudication it could only be controlled in chancery. Since, however, in modern practice the writ of error of fact became supplanted by the summary and more available mode of a motion, that substitute has been generally applied in other states, and in this, though never to the exclusion of the more formal remedies, to vacate statutory bonds; and that substitute has been extended, so as to perform the function of the writs of error of both kinds, and also of a bill in equity. Hence it has been assumed as a maxim of jurisdiction, that he who resorts to the substitute, may not afterward relitigate in the ampler original mode. Hence, too, we say it must follow, that the summary remedy should be rendered coextensively efficient with the mode that is more ample as to mere form, and is adequate to redress. The remedy by writ of error, of either sort, is only barred by the lapse of three yearsand within that period the chancellor, in a proper case, would relieve ; and the question recurs, from what statute, principle, analogy, or notion is drawn the position, that the motion to quash can only be made at the return term 1
At January term, 1840, Judge Turner delivered the opinion in Wanzer v. Barker, 4 How. 363. In that case, there were the writs of supersedeas and of error, that intervened between the bond and the motion to quash; and the motion was to quash not only the bond but the execution; The main question *567 argued was, the constitutionality of the statute. Authorities wore cited, to show that a motion to quash an execution is addressed to the discretion of the court; and that since its refusal does not preclude the common law remedy of audita querela, &c., that refusal might not be assigned for error ; and, in fact, that a motion to quash ah execution after its return, and after becoming dead, was irregular. Judge Turner, in conclusion, says : “ Besides, the appellant was too late, in moving to quash, when he suffered a term-to pass.” Whether this sentiment was sprung upon the motion in reference to the execution, or to the bond, we are left to conjecture. Be it as it may, this is the leading case. No law, reason, or ground is given, either in the argument or in the opinion, to show why the motion on the bond should be limited to that term. Now when an execution has been returned it is dead, and there can be no sufficient motive to quash it. It has performed its office, and has ceased. The acts done, or omitted, during the period it had to run, may properly be subjects of judicial investigation ; and the time, mode, form and parties, may all be important elements. The bond remains in force and vitality until satisfied, recalled, or vacated. Upon the writ of error of fact, sued out on the last day of the third year, you would look at the judgment and execution, to see if they sustained it; and if not, it would be recalled. That a petition to vacate the bond may be presented, subsequent to the return term, was allowed in Williams v. Crutcher, 5 How. 71. There, after the return of execution on the bond, satisfied by levy and sale of Williams’s property, as surety, he filed his petition, stating that his signature had been put to a blank, and praying to be allowed to plead non est factum. Pleas to that effect were filed, demurred to, and the demurrer sustained and petition dismissed. On full argument and consideration in this court, the judgment below was reversed, and rendered for the petitioner. This case established the principle for which we contend, as broadly as could be desired ,• for there can be no substantial difference between a motion made in open court, upon specifications and affidavit, if required, and a petition presented in or out of court, *568 stating the same matter. If a petition may afford a remedy against the bond at a subsequent term, is there, or can there be any reason why it should not be afforded by motion ? This is asked with urgent anxiety, to find in response a conceivable ground or motive for the discrimination.
Kernighan v. Scanland, 6 How. 540. Judgment was rendered at July term, 1838, Kernighan v. Mitchell; execution on it and bond taken, with Scanland surety. Execution issued on the forfeited bond, which in April, 1841,- was levied on Mitchell’s property. Scanland proceeded by writ of error, coram nobis, to quash the original execution, the bond, and the last execution. 1. Because there was no original judgment on which to issue the first execution. 2. Because, therefore, the bond was void. 3. Because, accordingly, the last execution was irregular. The court quashed both executions and the bond, and Kernighan appealed. The counsel of the appellant, inter alia, relied on the estoppel created by the recital of the judgment in the condition of the bond; but whether in fact there was or was not a judgment, the report of the case does not show. Turner, Judge : “ The court erred in going back and quashing a process to a preceding term, as has been often decided by this court. Scanland, the security, was not injured,” &c. Here the court seemed to have regarded solely the irregularity of interfering with a defunct execution, and so far there can be no objection ; but assuredly the opinion delivered left the case undecided. The main question was, whether the court below erred in recalling the statutory judgment on the writ of error, coram nobis ? Was there an original judgment ? If not, did Scanland make a judgment by his signature to the bond % Could the writ of error, coram nobis, be presented after the lapse of the return term of the bond 1 Those were questions that were not met. The decision, however, without adverting to the merits, had the effect, as the law of the case, to reverse the proceeding below.
We now come to Conn v. Pender, 1 S. & M. 386. The bond of Felts, and Conn, his surety, to Pender, was returned to September, 1838. At June term, 1840, the bond, as to Felts only, *569 was quashed. Then execution issued on the bond against Conn, the surety, who moved to quash the bond and execution on it, which the court below refused to do, and he appealed. That judgment of refusal was by this court reversed, and the last execution quashed. In the report of the opinion per Curiam, this sentence is used : “ The judgment of the court, in quashing the bond at a term subsequent to that at which it was returned forfeited, was, in our opinion, wholly void. It was clearly erroneous in quashing it, as to the principal,” &c. The counsel for the appellee asserts, that the appellant had been once heard at law, and once in equity, and that at the late day, April, 1841, ought not to have been heard a third time on the same complaint. We have not the record before us, so as to see on what ground the quashal of the bond occurred. It was certainly erroneous to quash it as to one obligor, and leave it to stand as obligatory against the other. With profound deference we ask, if in this case it was competent for this court, though the court of the highest power, to pass in review upon the judgment of June, 1840, when it was the judgment of April, 1841, that was brought up for revision. But considering it as competent, it is manifest that the ^principle, that a judgment, quashing such bond at a term subsequent to its return term, is void, is here for the first time introduced ; introduced incidentally, and, as we trust, not upon full deliberation. That the quashal, as to one, was clearly error, we must ever admit. But that a judgment quashing a bond must be necessarily void, if rendered at a subsequent term, we confess we are unable to perceive.
It could not be regarded as ipso facto void on any ground but the total want of jurisdiction. This we are prepared to assert forever. We are then brought to examine the question whether the court had jurisdiction ? We have intimated the utter absurdity of quashing a spent execution, because no end is to be obtained by it. It is not so as to an execution not spent, for in many instances it may be important to supersede and quash it to prevent the mischief or injustice about to be inflicted under *570 it. So it is with a forthcoming bond that is illegal, fraudulent, or spurious — whilst it is unquashed, recalled or vacated, a reason or cause exists to resort to some remedy that is adequate to remove it; and of course a corresponding reason prevails to afford the remedy. We have shown that the statute does not expressly give any remedy ; but that the courts everywhere had concurred in resorting to the summary mode of a motion to quash. Even Conn’s case concedes that a motion might have been properly made at the return term. In Williams v. Crutcher, supra, relief was sought by petition after the return term, and after satisfaction of the execution on the bond, and was granted by this court. We have shown that the cases in 4 and 6 How. did not establish a principle in conflict with that on which this court proceeded in Williams v. Crutcher. Where, then, we repeat, is the reason or the authority for the declaration in Conn’s case that the court’s action at a subsequent term was void because made at that term 1 Is it that, what a court does judicially at one term cannot be undone by it at another 1 It is true, as a general proposition, that the same court, exerting original jurisdiction, cannot, at one term, make an order or judgment affecting materially or definitively the rights of litigants, and at a subsequent term reverse it for error in law, or improvidence. But the return into court by a sheriff of a bond taken by him is not a judicial act, and nothing but omnipotence could make it so. It is necessary that those reported as obligors should have time, opportunity, and a proceeding adequate to solve the question of their liability qn it. If it be a forgery they may not hear of its existence until after execution on it is about to be enforced. Were it a contract they would not be bound to contest it until cited to defend suit brought. As a judgment they have three years within which to revise it for error of fact or of law, or to invalidate it for fraud or forgery; and this though collection have been enforced. Now they, in any supposable case, move at the first term to quash, no matter for what; it is well, the court has unquestionable jurisdiction. In another case in all things similar, a motion of the same kind is made at a subsequent term Iqut within three years, and it is said the court has no jurisdic *571 tion ! How is this 1 If it were by petition it would be entertained ! If by writ of error or bill in equity jurisdiction would exist! But a motion is coram nonjudice! We may say, with due deference, that if the court could take cognizance of the matter, in any mode, the question of jurisdiction could not be interposed as a barrier. The obligee might have urged the lapse of time as a barrier, if by any law the motion had been limited to the return term; but even if such law had ever existed, and if the objection had not been urged, the jurisdiction would have been clear beyond all question. To illustrate : A bond over sixteen years old is put in suit; and the defendant pleads but does not rely on the limitation or presumption of payment, and judgment goes for its amount. Is it void ? If the defendant plead the statute, he may succeed on it; but certainly the jurisdiction is not involved. The jurisdiction of the circuit court is imparted by the constitution, and does not depend on the writ out of chancery, or any fiction or mere form of proceeding, but wholly on the subject-matter and amount of litigation. If the matter have ever been cognizable before it in any form, and be introduced after the remedy is barred, if judgment be given, though it be never so erroneous it is not void, not co-ram nonjudice.
We respectfully suggest, also, that the decisions of this court on this question, stand in direct conflict with each other, and especially those of Conn v. Pender, and Williams v. Crutcher. Most of the views here presented were indeed offered by way of brief in the case sought to be now reconsidered; but we feel regret that it seems not to have been noticed. We have only to add tíiat if a reconsideration and modification of the rule under a former decision can be justified in any case, it will be in this, where, by turning the creditor round on a bond that was quashed, the security afforded by the interpleader bond is rendered abortive, and his debt utterly lost. Foote & Hutchinson.
So far as the preceding petition seeks a modification of the doctrine, that a judgment of a circuit court quashing a forthcoming bond, for any cause, at a term subsequent to the term at which *572 it is returned forfeited, is ipso facto void, we concur with the counsel of petitioner in believing a reconsideration proper.
C. R. Clifton,
John D. Freeman,
L. Lea,
J. F. Foute,
L. Sanders, jr.
Chas. Scott.